**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Hillman Group, Inc., ) | CV 07-2446-PHX-JAT |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Hy-Ko Products Company, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before this Court is Defendant Hy-Ko Products Company's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or in the Alternative to Transfer Venue (Doc. #6). Plaintiff Hillman Group, Inc. filed an Opposition to Defendant's Motion (Doc. #21). Defendant then filed a Reply in Support of its Motion (Doc. #22), and Plaintiff subsequently filed a Surreply (Doc. #26).

In response to a request from Plaintiff, this Court permitted limited jurisdictional discovery. Both Plaintiff and Defendant have filed supplemental briefing on the personal jurisdiction issue (Doc. ## 41, 46). For the following reasons, the Court will grant Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

**I. FACTS**

Plaintiff filed its Complaint on December 4, 2007, alleging Defendant's infringement of its U.S. Patent No. 7,114,894 B2. This patent, entitled "Key Cutting Machine and Method," discloses a design for a key cutting device. Plaintiff is a Delaware corporation

1  with executive offices in Cincinnati, Ohio. Defendant is an Ohio corporation with its
2  principle place of business in Northfield, Ohio. The allegedly infringing device has never
3  been made, used, sold, or offered for sale in Arizona, nor did the alleged infringement take
4  place here. Defendant does sell unrelated products to Arizona residents via third party
5  retailers and direct sales amounting to $259,266; approximately 0.5% of Defendant's annual
6  revenue.

Defendant does not maintain an office, plant, address, post office box, telephone number, or bank account in Arizona. Defendant does not own or lease any real property in Arizona. Defendant is not registered or licensed to do business in Arizona, nor does it have a registered agent for service of process here. However, Defendant does enlist the services of two Arizona residents: (1) Mr. Stewart Kirschner, Defendant's Western Regional Sales Manager (who maintains his primary residence in California); and (2) Mr. Barry Parks, an independent contractor who reports directly to Mr. Kirschner. Neither of these individuals is involved with the key cutting machine at issue. Plaintiff has not shown that these individuals were deliberately placed in Arizona by Defendant.[1]

Defendant also maintains a website containing an automated search function that allows users to input ZIP codes. The site will return nearby addresses of third party retailers that purchase Defendant's products for distribution. When Defendant ships its products to these retailers, it also includes store displays advertising its brand and products. However, Defendant does not mandate display of these advertisements. It does not appear that Defendant disseminates any other advertising in Arizona. Defendant also attends periodic trade shows in Arizona where it offers training to potential customers, and it maintains a customer service telephone number that residents of Arizona can call if they need assistance using products purchased from Defendant.

Plaintiff is headquartered in Ohio, but it maintains that its key-related business is

---

[1] In fact, as discussed below, it appears that Mr. Kirschner purchased a second home in Arizona contrary to the wishes of Defendant who would have preferred him to remain solely in California. (Def.'s Supplemental Brief, Ex. C).

- 2 -

1 centered around Tempe, Arizona. Additionally, the inventors of the patent at issue reside in
2 Arizona.

## II. PERSONAL JURISDICTION

The plaintiff bears the burden of establishing personal jurisdiction. *See, e.g., Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995) (citing *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990)). A defendant may move prior to trial to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2); *see, e.g., Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1284 (9th Cir. 1977) (citing Rule 12(b)(2)). When a defendant does so, "the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction'" over the defendant. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l , Inc*. 551 F.2d 784, 787 (9th Cir. 1977)).

When deciding a personal jurisdiction issue in a patent infringement action, a district court should apply Federal Circuit law. *See Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003). The Federal Circuit and Ninth Circuit agree that if the district court does not hear testimony or make findings of fact and permits the parties to submit only written materials, then the plaintiff must make only a prima facie showing of jurisdictional facts to defeat the defendant's motion to dismiss. *See Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,* 297 F.3d 1343, 1347 (Fed. Cir. 2002); *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir. 1995) (citing *Data Disc*, 557 F.2d at 1285 and *Farmers*, 907 F.2d at 912).[2] In considering a motion to dismiss, a district court must accept the plaintiff's complaint and all uncontroverted allegations contained therein as true and resolve any factual conflicts in the affidavits in plaintiff's favor. *Deprenyl*, 297 F.3d at 1347; *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

A district court may assert personal jurisdiction over a nonresident defendant only

---

[2]The written materials may consist of the pleadings, declarations, affidavits, deposition testimony, exhibits, or other evidence. *See Omeluk*, 52 F.3d at 268.

- 3 -

when doing so would be (1) allowed by the forum state's long-arm statute, and (2) consistent with due process. *See Amana Refrigeration, Inc. v .Quadlux, Inc.*, 172 F.3d 852, 857 (Fed. Cir. 1999); *Sher v. Johnson*, 911 F.2d 1357, 1360 (9th Cir. 1990). Arizona's long-arm statute provides for personal jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); *see Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997); *see also Uberti v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995), *cert. denied*, 516 U.S. 906 (1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution.").[3] Therefore, the sole question here is whether the exercise of jurisdiction over Defendants would comport with federal due process.

Absent traditional bases for personal jurisdiction (for example, physical presence, domicile, and consent), the Due Process Clause requires that nonresident defendants have certain *minimum contacts* with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Due Process Clause protects a defendant's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). "By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 472 (internal citations omitted).

If a court determines that a defendant's contacts with the forum state are sufficient to satisfy the Due Process Clause, then the court must exercise either "general" or "specific" jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S.

---

[3]Rule 4.2(a) provides: "A court of this state may exercise personal jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States."

- 4 -

1 408, 414-15 nn.8-9 (1984). The nature of the defendant's contacts with the forum state will 2 determine whether the court exercises general or specific jurisdiction. *Id.* Since Plaintiff 3 here does not contend that specific jurisdiction exists, the Court need only consider if 4 sufficient contacts exist for it to exercise general jurisdiction over Defendant.

5 The burden to establish general jurisdiction is substantially higher than that which is 6 required to establish specific jurisdiction. The defendant must have "continuous and 7 systematic" contacts with the forum state. *See Red Wing Shoe Co., Inc. v. Hockerson-* 8 *Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998). Additionally, a plaintiff must show 9 "corporate operations within a state . . . so substantial and of such a nature as to justify suit 10 against it on causes of action arising from dealings entirely distinct from those activities." 11 *Int'l Shoe*, 326 U.S. at 318. In many cases "continuous activity of some sorts within a state 12 is not enough to support the demand that the corporation be amenable to suits unrelated to 13 that activity . . . ." *Id.* (citations omitted).

14 **III. DISCUSSION**

15 **A. Defendant's Website**

16 Plaintiff contends that the Defendant's website through which Arizona residents (or 17 indeed, any residents of the United States) may locate dealers that could carry Defendant's 18 products constitutes deliberate entry into the Arizona market. However, merely maintaining 19 a website that Arizona residents may access is not enough to satisfy general jurisdictional 20 requirements. *See Molnycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F. 21 Supp. 2d 448, 451 (E.D. Pa.1999) ("the establishment of a website through which customers 22 can order products does not, on its own, suffice to establish general jurisdiction."); *see also* 23 *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) 24 (distinguishing between "passive" websites that merely provide information and "active" 25 websites through which commercial activity occurs). Here, there is no evidence that 26 Defendant even consummates business transactions with residents of Arizona by means of 27 the website at issue. The site merely provides information by locating potential third party 28 sellers of Defendant's products. While it could be said there is a slightly "interactive" aspect

1  in that the user must enter a ZIP code, this action merely makes the access of this information
2  more efficient.  It does not change the essentially passive nature of the website, and is
3  therefore insufficient to confer general jurisdiction on Defendant.

### B. Defendant's Point of Sale "Advertising"

Plaintiff further declares that Defendant's product displays included in its shipments to distributors creates sufficient minimum contacts with Arizona.  However, given this line of reasoning, it is hard to see how any product display or packaging would not be considered "advertising" subjecting almost any product retailer to general jurisdiction in any state in which its products are sold.  There is nothing about the specific displays in question that appears to be customized or directed toward the Arizona market.  Additionally, Defendant does not mandate that retail stores include these "advertisements" when displaying Defendant's products in store.  Given this lack of direct control,[4] decals and displays included in a shipment of products is not enough to subject Defendant to general personal jurisdiction.  *See Trintec Indus., Inc. v. Pedre Promotional Prod.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) (no personal jurisdiction given the defendant's lack of control over third party promotion of its products).

### C. Defendant's Direct Arizona Sales

Plaintiff also asserts that Defendant's direct sales of unrelated products in Arizona are sufficiently continuous, systematic, and substantial to subject Defendant to general personal jurisdiction here.  It is arguably true that Defendant's sales and contacts in Arizona are "continuous."  Defendant has consistently made direct sales to Arizona retailers for at least the past few years, and there is no indication that Defendant intends to cease these activities anytime soon.

---

[4] Defendant does give instructions or suggestions to the store owners as to the best way to display these items, however, this does not equate to direct control.  The retailers are not bound to follow these suggestions, and Plaintiff has not shown that there would be any negative repercussions should these stores decide to use the displays in other manners, or not at all.

- 6 -

However, as stated above, a plaintiff must also show "corporate operations within a state . . . so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318. In many cases "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity . . . ." *Id.* (citations omitted).

Here, although Defendant's actions may be continuous, they are simply not substantial enough to justify suit against it for unrelated activities. Direct sales amounting to 0.5% of Defendant's revenue are *de minimus* in this particular case, especially given that Defendant does not maintain a conventional physical presence in the state.[5]

### D. Defendant's Employees and Third Party Retail Sales

Finally, Defendant does utilize the services of two residents of Arizona for business purposes. However, "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros*, 466 U.S. at 417. Plaintiff has failed to show that the location of these "agents" in Arizona was a deliberate action of Defendant to establish contacts with the Arizona market. Mr. Parks is an independent contractor, and Plaintiff has not shown that Defendant has any control over his place of residence. As to Mr. Kirschner, who maintains a second home in Arizona along with a

---

[5] Plaintiff argues that Defendant's per capita sales in Arizona are more than its per capita sales in California, which Defendant considers to be the center of its western sales activity. While Plaintiff declines to offer any case law to support the idea that per capita sales are a proper consideration when determining general personal jurisdiction, its point (presumably that Defendant's sales are as substantial as can be expected given Arizona's size) is well taken. One would hardly decline to extend general jurisdiction over a major multi-national retailer with outlets in the state simply because its sales in that state amount to only a small percentage of its total income. However, per capita sales similar to other states is insufficient, standing alone, to confer general jurisdiction, especially given Defendant's lack of physical presence in the state. *Cf. Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 614 (5th Cir. 2008) (percentage of sales averaging 1.45% over four years insufficient to confer general jurisdiction without physical presence in state).

- 7 -

1 primary residence in California, it appears that Defendant actually opposed Mr. Kirschner's
2 choice to purchase a second home in Arizona. (Def.'s Supplemental Brief, Ex. C). Mr.
3 Kirschner was permitted to spend time in his second home in Arizona provided that he would
4 maintain a primary residence "in California due to the fact that the majority of [his] business
5 . . . is in California." (*Id.*) The personal decision of an employee to reside in a particular
6 state does not subject his employer to general jurisdiction in that state. *See Johnston*, 523
7 F.3d at 613 (employees "permitted to remain in Texas because they were able to perform
8 their jobs anywhere in the world" did not subject the defendant to general personal
9 jurisdiction in Texas).

10 Additionally, "no court has ever held that the maintenance of even a substantial sales
11 force within the state is a sufficient contact to assert jurisdiction in an unrelated cause of
12 action." *Congoleum Corp. v. DLW Aktiengesellschaft* 729 F.2d 1240, 1242 (9th Cir. 1984).
13 In the absence of an office, mailing address, or telephone number in Arizona, mere residence
14 of sales people in state is insufficient to confer general personal jurisdiction.

15 Similarly, Defendant's sales through third party nationwide retailers are not sufficient
16 to establish general jurisdiction. *See Red Wing*, 148 F.3d at 1361 (Defendant's receipt of
17 royalty income from sales of licensees in forum state insufficient to confer personal
18 jurisdiction). Absent evidence of action specifically directing products toward the Arizona
19 market, "'the unilateral activity of another party or third person' [is] not attributable to a
20 defendant." *Id.*

21 **E. Additional Contacts**

22 Plaintiff also contends that Defendant regularly attends trade shows in Arizona where
23 they periodically train customers and that it also provides technical support by offering a
24 service number that its customers can call. However, attending periodic trade shows is
25 hardly contact that would be considered "systematic" and "continuous." Additionally,
26 Plaintiff offers no legal support for the contention that maintaining a customer service phone
27 line in Ohio in any way subjects Defendant to general jurisdiction in any state in which that
28 number is frequently called by customers.

- 8 -

### F. Total Contacts

Thus, it appears that Defendant is carrying on a continuous, "but limited, part of its general business" in Arizona. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952). In *Perkins*, the Supreme Court found that when a foreign corporation maintained an office, maintained bank accounts, and held directors' meetings in Ohio during occupation of the defendant's country, Ohio courts were free to exercise or decline jurisdiction for events not arising from the defendant's actions within the state. 342 U.S. at 447-48.

Here, in contrast to the facts in *Perkins*, the contacts established by Defendant (and not by third parties) consist of a minimal number of direct sales, maintenance of a passive website, and inclusion of point of sale advertising displays in its retail shipments. Defendant is not licensed to do business in Arizona, does not have an agent for service of process in Arizona, does not own or use property here in Arizona, and does not have a bank account, mailing address, or telephone number here.

These contacts are substantially less than those present in *Perkins*, and are hardly "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318. The Court therefore finds that Defendant's minimal contacts with Arizona, even when taken together, are insufficient to confer general jurisdiction on this Court.

### IV. REQUEST TO STRIKE

Defendant has also filed a Motion to Strike an exhibit in Plaintiff's Memorandum (Doc. # 27). Because the Court would arrive at the same conclusion even considering this exhibit, the request to strike will be denied.

### V. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #6) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike a Portion of Plaintiff's Memorandum (Doc. # 27) is **DENIED**.

**IT IS FURTHER ORDERED** denying any remaining pending motions as moot.

DATED this 12th day of August, 2008.

_____
James A. Teilborg
United States District Judge

- 10 -